IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JONATHAN CARL COCH SIMONIAN, | ) | No. CV-F-06-1416 OWW/LJO |
| | ) | |
| | ) | ORDER DENYING FOWLER UNIFIED |
| | ) | SCHOOL DISTRICT'S MOTION TO |
| Plaintiff, | ) | DISMISS [Doc. 9] |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| FOWLER UNIFIED SCHOOL | ) | |
| DISTRICT, et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Jonathan Carl Coch Simonian has filed a Complaint

for Violation of Equal Protection Clause.  Defendants are the

Fowler Unified School District (District) and Does 1 through 40.

Paragraph 1 of the Complaint alleges that Plaintiff "brings

this action for redress of [the District's] violation of the

Equal Protection Clause of the Fourteenth Amendment of the United

States Constitution" and that "[p]ursuant to 28 U.S.C. Section

[sic] 1331 and 1343(a), the Court has jurisdiction over the

claim, which is brought under 42 U.S.C. Section 1983."

1

1        Paragraphs 7 through 10 of the Complaint allege that during

2   the fall semester of Plaintiff's senior year at Fowler High

3   School, District officials conducted a search of Plaintiff's car,

4   asserting that the search "revealed a 'pin-head sized leaf of

5   marijuana' found stuck to a piece of rubber lining on the bottom

6   of the front console glove compartment, under a garage door

7   opener."  On October 14, 2004, Plaintiff was advised by the

8   District's Board of Education that the Board had voted to expel

9   Plaintiff for the balance of the first semester of the 2004/2005

10  school year, but to suspend the expulsion and place Plaintiff on

11  probation in an alternative educational program for the balance

12  of the first semester.  In support of its decision, the

13  District's Board of Education observed:

14              Grounds exist for the student's expulsion
                from the Fowler Unified School District for
15              violation of Education Code Section 48900(c)
                and the District's Student Discipline Policy.
16              The Board further finds that due to the
                nature of the offense and the prior incidents
17              of suspected marijuana use, that other means
                of correction are not feasible or have failed
18              to bring about proper conduct.

19  Plaintiff appealed to the Fresno County Board of Education.  On

20  December 16, 2004, the Fresno County Board of Education reversed

21  Plaintiff's expulsion, observing:

22              A.   The pin-head sized speck pulled from
                Plaintiff's [sic] car was not a useable
23              amount of marijuana, which, under criminal
                law, would preclude conviction;
24
                B.   The record was devoid of evidence to
25              suggest that Appellant's behavior could not
                feasibly be corrected;
26

                              2

1
2

        C.   The record is void [sic] of any efforts
        to remediate Appellant's behavior through
        other means of correction; and

3
4
5
6
7
8

        D.   Assuming the possession of a speck of
        marijuana can support an expulsion, the
        Fowler Unified School District confirmed that
        Plaintiff [sic] was an 'A' student, works of
        weekends, participates in both band and
        leadership classes, has been simultaneously
        taking classes at Fowler High School and
        California State University, Fresno, quite
        successfully, was respectful of adults, had a
        clean record, favorable attendance and had
        handled the situation well.

9 Plaintiff, as a result of the expulsion, "was forced to miss

10 approximately three months of the first semester of his senior

11 year, during which he was precluded from participating in normal

12 school activities and functions."

13     The Complaint alleges a single cause of action for denial of

14 equal protection pursuant to 42 U.S.C. § 1983 and prays for

15 $500,000 in compensatory damages and for attorney's fees and

16 costs.

17     The District moves to dismiss the Complaint pursuant to Rule

18 12(b)(6), Federal Rules of Civil Procedure, for failure to state

19 a claim upon which relief can be granted.

20     **A.   <u>Governing Standards</u>**.

21     A motion to dismiss under Rule 12(b)(6) tests the

22 sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729,

23 732 (9th Cir.2001).  Dismissal of a claim under Rule 12(b)(6) is

24 appropriate only where "it appears beyond doubt that the

25 plaintiff can prove no set of facts in support of his claim which

26 would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-

3

1  46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the

2  complaint lacks a cognizable legal theory or where the complaint

3  presents a cognizable legal theory yet fails to plead essential

4  facts under that theory.  *Robertson v. Dean Witter Reynolds,*

5  *Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to

6  dismiss under Rule 12(b)(6), the court must assume the truth of

7  all factual allegations and must construe all inferences from

8  them in the light most favorable to the nonmoving party.

9  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However,

10  legal conclusions need not be taken as true merely because they

11  are cast in the form of factual allegations.  *Ileto v. Glock,*

12  *Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  Immunities and other

13  affirmative defenses may be upheld on a motion to dismiss only

14  when they are established on the face of the complaint.  *See*

15  *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v.*

16  *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling

17  on a motion to dismiss, the court may consider the facts alleged

18  in the complaint, documents attached to the complaint, documents

19  relied upon but not attached to the complaint when authenticity

20  is not contested, and matters of which the court takes judicial

21  notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th

22  Cir.1988).

23       **B.   Merits of Motion**.

24       The District contends that the Complaint fails to state a

25  claim because California statute and case law precludes monetary

26  damages for what the District characterizes as a tort claim for

4

1   educational malpractice resulting from a disciplinary action.

2        Specifically, the District cites California Government Code

3   § 815(a)("[e]xcept as otherwise provided by statute: [a] public

4   entity is not liable for an injury, whether such injury arises

5   out of an act or omission of the public entity or a public

6   employee or any other person."

7        To the extent that the District's motion relies on Section

8   815, the motion is without merit and is DENIED.  Section 815 was

9   enacted to eliminate public entity liability based upon common

10  law tort claims.  *See Williams v. Horvath*, 16 Cal.3d 834, 838

11  (1976); *see also Cochran v. Herzog Engraving Co.*, 155 Cal.App.3d

12  405, 409 (1984)("Government Code section 815, enacted in 1963,

13  abolished all common law or judicially declared forms of

14  liability for public entities, except for such liability as may

15  be required by the federal or state Constitution.")  The

16  Complaint is not based on common law tort.  The Complaint alleges

17  that the District denied Plaintiff the equal protection of the

18  laws guaranteed by the Fourteenth Amendment and is brought

19  pursuant to a federal statute, 42 U.S.C. § 1983.

20       The District also argues that dismissal is required because

21  Plaintiff cannot state a claim for relief based on the District's

22  action of expulsion.  In so arguing, the District relies

23  primarily on *Tirpak v. Los Angeles Unified School District*, 187

24  Cal.App.3d 639 (1986) and *Peter W. v. San Francisco Unified Sch.*

25  *Dist.*, 60 Cal.App.3d 814 (1976).

26       In *Tirpak*, a student who was suspended from school and

5

1  denied readmission, brought an action for damages against the

2  school district.   The Court of Appeals rejected the student's

3  contention that the school district had breached a mandatory duty

4  under California Government Code § 815.6 based on the California

5  Constitution and California Education Code § 48200, resulting in

6  economic injury.   The Court of Appeals agreed with the school

7  district that the suspension and expulsion provisions in

8  California Education Code "sections 48900, 48911 and 48918 are

9  part of a comprehensive set of procedural guidelines found in the

10  Education Code, which are administrative in nature and intended

11  to provide due process" and held that "[s]ince it is clear that

12  these provisions of the Education Code were not designed to

13  protect students and their parents from money damages resulting

14  from 'educational' injuries, plaintiffs have failed to state

15  facts sufficient to constitute a cause of action."   187

16  Cal.App.3d at 643.

17      In *Peter W.*, a student claimed that the school district was

18  negligent in failing to provide the student with an adequate

19  education.   The Court of Appeals held that a school district does

20  not owe a duty of care to students:

21          We find in this situation no conceivable
           'workability of a rule of care' against which
22          defendants' alleged conduct may be measured
           ..., no reasonable 'degree of certainty that
23          ... plaintiff suffered injury' within the
           meaning of the law of negligence ..., an no
24          such perceptible 'connection between the
           defendant's conduct and the injury suffered,'
25          as alleged, which would establish a causal
           link between them within the same meaning.
26

6

1

2
> These recognized policy considerations alone
> negate an actionable 'duty of care' in
> persons and agencies who administer the
> academic phases of the public educational
> process.  Others, which are even more
> important in practical terms, command the
> same result.  Few of our institutions, if
> any, have aroused the controversies, or
> incurred the public dissatisfaction, which
> have attended the operation of the public
> schools during the last few decades.  Rightly
> or wrongly, but widely, they are charged with
> outright failure in the achievement of their
> educational objectives; according to some
> critics, they bear responsibility for many of
> the social and moral problems of our society
> at large.  Their public plight in these
> respects is attested in the daily media, in
> bitter governing board elections, in
> wholesale rejections of school bond
> proposals, and in survey upon survey.  To
> hold them to an actionable 'duty of care,' in
> the discharge of their academic functions,
> would expose them to the sort of claims -
> real or imagined - of disaffected students
> and parents in countless numbers.  They are
> already beset by social and financial
> problems which have gone to major litigation,
> but for which no permanent solution has yet
> appeared ... The ultimate consequences, in
> terms of public time and money, would burden
> them - and society - beyond calculation.

60 Cal.App.3d at 825.

The District argues that these cases make clear that a

plaintiff cannot seek money damages for any injury stemming from

the school's administration of discipline, whether at the

classroom level or by the administration.

However, as Plaintiff responds, the Complaint is not based

on tort or California law, but rather, alleges a violation of the

Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution.  Plaintiff notes that the Supreme Court has

7

1  applied the Equal Protection Clause to a "class of one".  *See*

2  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)("[T]he

3  Equal Protection Clauses gives rise to a cause of action on

4  behalf of a 'class of one' where the plaintiff did not allege

5  membership in a class or group" and "where the plaintiff alleges

6  that [he] as been intentionally treated differently from others

7  similarly situated and that there is no rational basis for the

8  difference in treatment").  Where an equal protection challenge

9  is based on "selective enforcement of valid laws", a plaintiff

10  can show that the defendants' rational basis for selectively

11  enforcing the law is a pretext for "an impermissible motive."

12  *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th

13  Cir.2004).  Plaintiff refers to the Complaint's allegations of:

14  (1) intentional acts or omissions by the District based on malice

15  or bad faith intent; (2) taken under color of state law; (3) that

16  caused a deprivation of Plaintiff's right to equal protection;

17  (4) and that Plaintiff's treatment was in contrast to the

18  discipline accorded the daughter of the District's governing

19  board who was found to be under the influence of drugs and/or

20  alcohol on campus.  Plaintiff contends that the Complaint states

21  a claim upon which relief can be granted for violation of equal

22  protection pursuant to Section 1983.

23      In its reply brief, the District asserts that this case

24  presents an "issue of first impression", i.e., "whether the Equal

25  Protection Clause trumps California state law that specifically

26  prohibits a suit for money damages on the grounds that a

8

1 secondary public education student was unfairly disciplined or

2 that the school district failed to follow the suspension or

3 expulsion provisions of California's Education Code."  Although

4 the District represents that it was unable to locate any

5 authority addressing the issue, the District does refer to *T.H.*

6 *v. San Diego Unified School Dist.*, 122 Cal.App.4th 1267 (2004)

7 and *Granowitz v. Redlands Unified School Dist.*, 105 Cal.App.4th

8 349 (2003).

9     In *T.H.*, a student brought a civil action against a school

10 district, seeking injunctive and declaratory relief after she was

11 expelled from an alternative program for violating a school rule

12 and placed in a community school where she was allegedly

13 assaulted and sexually harassed, and further contending that the

14 school district's "zero tolerance" regulations facially violated

15 procedural due process under the United States and California

16 Constitutions.  In addressing the student's contention that

17 district regulation violated the California Education Code, the

18 Court of Appeals noted that it must construe the statutes

19 "keeping in mind the Legislature's expressed intent to provide

20 each school district with broad discretion and flexibility to

21 accomplish its educational mission" and that "[a]bsent a specific

22 statutory limitation, a school district 'is free to act as it

23 sees fit within the purposes for which it was established."  122

24 Cal.App. at 1281.  In pertinent part, the Court of Appeals

25 rejected the facial due process challenge.  122 Cal.App.4th at

26 1286-1287.  In so holding, the Court of Appeals rejected the

1  challenge that the school district's "Notice of Zero Tolerance

2  Policy" sent home to parents did not identify every single

3  offense for which expulsion was possible, holding that the record

4  established that the school district provided repeated notices to

5  parents and students who are subject to expulsion and that there

6  is "no authority supporting the proposition that individuals have

7  a due process right to be told in advance of every possible

8  specific offense that could subject them to punishment [but]

9  instead, individuals have the right to procedural protections

10 once an allegation is made against them, and the District's

11 regulations provide these required protections to students."  *Id.*

12 at 1287.  The Court of Appeals further rejected the due process

13 challenge that a student is never told that the school district's

14 policies remove a school principal's statutory discretion to

15 decide whether to recommend expulsion for zero tolerance

16 offenses, holding that "[t]here is no authority for the

17 proposition that a student is constitutionally entitled to have

18 notice of the scope of a prinicpal's authority vis-à-vis the

19 governing school board" and that "the District regulations

20 provide a student with the right to a full range of statutory

21 protections, and these rights are not diminished merely because a

22 school principal does not have the discretion to dismiss the

23 matter at the outset of the process."  *Id*.

24      Finally, the Court of Appeals rejected the facial due

25 process challenge that the school district policies permit the

26 principal/superintendent to recommend a student for expulsion for

10

1 offenses that are not included in the discipline provisions of

2 the California Education Code, ruling that there was no showing

3 in the record that the school district will expel for these

4 offenses under its policies and that, to the extent there are

5 some inconsistencies within the school district's rules with

6 respect to these offenses, the inconsistencies do not create an

7 inevitable due process violation.  *Id.*  The Court of Appeals

8 noted that, "[t]o the extent a student believes he or she did not

9 receive proper notice in a particular case, the student may bring

10 an 'as applied' challenge to the expulsion order."  *Id*. at 1287

11 n.8.

12      In *Granowitz*, a high school student brought an action for

13 violation of substantive and procedural due process pursuant to

14 42 U.S.C. § 1983 against the school district after he was

15 suspended for five days for sexually related misbehavior.  The

16 Court of Appeals rejected these constitutional challenges on

17 their merits, 105 Cal.App.3d at 354-358.  In *dicta*, the Court of

18 Appeals, citing *Tirpak v. Los Angeles Unified School District*,

19 *id*., 187 Cal.App.3d at 644, stated that "no damages or attorney's

20 fees were recoverable except under 42 United States Code section

21 1983".  *Id.* at 358 n.14.

22      Relying on these cases as well as *Tirpak*, the District

23 argues:

24           [These cases] make it clear that the
             administration of discipline of public school
25           students is unique in itself.  It is
             contended this uniqueness prohibits a
26           comparison of enforcement techniques or

11

processes carried out by governmental agencies seeking to enforce laws upon the general public to the administration of discipline at school by school officials. Accordingly, the 'selective enforcement' cases, to include those cited by plaintiff in his opposition to this motion, are distinguishable and should not be controlling in this type of case.  The *Peter W.* and the *Tirpak* court were both concerned with the floodgate of litigation that would ensure if students were able to sue for educational malpractice or disenchantment with the discipline administered to them by school officials.  For public policy reasons these types of lawsuits are prohibited.

School administrators should not be unduly restricted from exercising their broad discretionary powers to administer school discipline, to be fearful of administering too much or too little discipline in a particular instance, such that it may create the appearance of unequal treatment.  Schools are unique in themselves, as often dictated by the particular student population, the families they come from, the school employees and officials, and the makeup of the community within the district.  And students are unique in themselves.  Discipline of one student compared to another may be vastly different depending upon the many varied factors considered in deciding what discipline to administer.  School officials should be free to administer discipline without fear of policing by the Equal Protection Clause, which in defendant's view would cause havoc of effective administration of discipline and a school's best efforts to control misbehavior and make schools safe.

To permit a student to seek monetary damages under the guise of the Equal Protection Clause would, in effect, nullify the *Tirpak* holding.  One can only imagine the number of students that believe their discipline administered by school officials was too harsh, that they had been unfairly targeted and that the school officials intended to so discipline them.  Defendants contend that the sundry motivations of local school officials

12

1                should not be policed by the Equal Protection
Clause of the United States Constitution.
2                The sheer number of possible cases that could
come before a court is staggering.  Even a
3                moderately artful complaint could bring
nearly every disciplined student before the
4                court complaining that the discipline was too
severe and that he/she was unfairly targeted.
5                The state can adequately police its own
processes in this regard.  As *Tirpak v. Los*
6                *Angeles Unified School Dist*. ... explained, '
student that believes the disciplinary
7                procedures were not fairly administered can
'proceed by way of administrative mandamus or
8                injunction to enforce the procedures
contained therein.'  It should also be noted
9                school district members are elected officials
and accountable to their constituents within
10               their district.

11  In a footnote to the reply brief, the District contends that

12  "only due process violations should be actionable with respect to

13  'constitutional principles,' as the suspension and expulsion

14  provisions of the Education Code are administrative in nature and

15  designed to ensure procedural fairness."

16     None of the authority cited by the District precludes a

17  claim under Section 1983 for violation of equal protection in the

18  administration of school discipline by a school district.  In

19  fact, the District's cited authority demonstrates that California

20  courts have addressed constitutional challenges, albeit due

21  process challenges, on their merits.  The District's parade of

22  horrors that will result if such a challenge is allowed to

23  proceed raise legitimate concerns, but cannot preclude as a

24  matter of law such a challenge.  The District cites no authority

25  from which it may be inferred that state educational policies and

26  provisions can prevent a claim that those provisions were

13

1 unconstitutionally applied.[1]

2      ACCORDINGLY, as set forth above, Defendants' motion to

3 dismiss for failure to state a claim upon which relief can be

4 granted is DENIED.

5 IT IS SO ORDERED.

6 **Dated:    January 11, 2007**                    **/s/ Oliver W. Wanger**
  668554                                    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18
_____

19      [1]At the hearing, the District referred to federal cases from
circuits other than the Ninth Circuit discussing the application of
20 the "class of one" and argued that Plaintiff cannot state a claim
based on those decisions.   This Order does not discuss the
21 District's assertion.  These cases were not cited in the District's
briefs in support of the motion to dismiss and citations were not
22 provided at the hearing, thereby preventing Plaintiff from
responding.
23      In addition, the court *sua sponte* raised the issue of Eleventh
Amendment immunity, referring the parties to *Belanger v. Madera*
24 *Unified School District*, 963 F.2d 248 (9th Cir.1992), *cert. denied*,
507 U.S. 919 (1993).  No opinion is expressed concerning the
25 application of the Eleventh Amendment or the possibility that the
immunity has been waived.  *See Hill v. Blind Industries and*
26 *Services of Maryland*, 179 F.3d 754, 758-759 (9th Cir.1999), *amended*
*on denial of rehearing,* 201 F.3d 1186 (9th Cir.1999).