IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JONATHAN CARL COCH SIMONIAN, | ) | No. CV-F-06-1416 OWW/GSA |
| | ) | |
| | ) | MEMORANDUM DECISION GRANTING |
| | ) | DEFENDANT'S MOTION FOR |
| Plaintiff, | ) | SUMMARY JUDGMENT (Doc. 21) |
| | ) | |
| vs. | ) | |
| | ) | |
| FOWLER UNIFIED SCHOOL | ) | |
| DISTRICT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Jonathan Carl Coch Simonian has filed a civil rights Complaint against the Fowler Unified School District for violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

The Complaint alleges that the District voted on October 14, 2004 to expel Plaintiff for the balance of the first semester of the 2004/2005 school year and to suspend the expulsion and place Plaintiff on probation in an alternative educational program after a search of Plaintiff's vehicle revealed a "pin-head sized leaf of marijuana"; that Plaintiff appealed the expulsion to the

1

Fresno County Board of Education; that, on December 16, 2004, the Fresno County Board of Education reversed the expulsion because the amount of marijuana found in Plaintiff's car was insufficient to result in conviction of a crime; that the record was devoid of evidence to suggest that Plaintiff's behavior could not be corrected; and, assuming the possession of a speck of marijuana could support expulsion, Plaintiff was an "A" student, works on weekends, participates in band and leadership classes, has been simultaneously taking classes at Fowler High School and CSUF, was respectful of adults, had a clean record, favorable attendance and had handled the situation well.  The Complaint alleges that, as a result of his expulsion, Plaintiff missed approximately three months of his senior year and was precluded from participating in normal school activities and functions.  The Complaint alleges that Plaintiff, as a "class of one" was denied equal protection because he was treated differently from other similarly situated students, the difference in treatment was intentional, and that there was no rational basis for the difference in treatment and that the difference in treatment was punishment for Plaintiff's exercise of his constitutional rights.

Defendant now moves for summary judgment.

A.   <u>Governing Standards</u>.

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an

element of a claim or a defense, the existence of which may affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Materiality is determined by the substantive law governing a claim or a defense. *Id.* The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party. *Id.*

The initial burden in a motion for summary judgment is on the moving party. The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to defeat summary judgment. *T.W. Elec.*, 809 F.2d at 630. The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial." *Id.* The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint." *Id.* The question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995). This requires more than the

3

1  "mere existence of a scintilla of evidence in support of the

2  plaintiff's position"; there must be "evidence on which the jury

3  could reasonably find for the plaintiff."  *Id*.  The more

4  implausible the claim or defense asserted by the nonmoving party,

5  the more persuasive its evidence must be to avoid summary

6  judgment."  *Id*.

7       B.  <u>Plaintiff's Evidentiary Objections</u>.

8       To support the motion for summary judgment, Defendant filed

9  a Declaration of John Cruz, who was and is the Superintendent for

10 the Fowler Unified School District.  Cruz avers he has personal

11 knowledge of the facts stated in his Declaration.

12      Plaintiff objects to the Cruz Declaration on the grounds it

13 lacks foundation and is predicated almost exclusively on hearsay.

14 Specifically, Plaintiff contends, Dr. Cruz was not present on

15 October 5, 2004 when Plaintiff was called to the parking lot of

16 the Fowler High School and he was not present at Plaintiff's

17 expulsion hearing conducted on October 14, 2004.  Plaintiff

18 objects to paragraphs 4, 5, 10, 14 and 15 of Dr. Cruz's

19 Declaration:

20          4.  On October 5, 2004, Jonathan was called
            to his car parked in the high school parking
21          lot, after a drug-sniffing dog showed
            interest in his car.
22
            5.  Jonathan gave permission to search his
23          car and a small substance suspected of being
            marijuana was found in the front console of
24          the car.  The substance subsequently tested
            positive for marijuana.
25
            ...
26

4

10.   During the 2003-2004 school year, there were thirteen students found to be in violation of the drug policy within the district and there were five investigations by the Fowler High School administration regarding alcohol related offenses.  (A table of offenses referred to in this declaration for the 2003-2004 school year is attached as Exhibit 'A'.)

...

14.   During the 2004-2005 school year, there were four students found to be in violation of this drug policy, including the Plaintiff. Each of the students was expelled for the remainder of the school year, with the exception of the Plaintiff who was expelled for the remainder of the fall semester only. (A table of the offenses referred to in this declaration for the 2004-2005 school year is attached hereto as Exhibit 'D'.)

15.   Seven students were found to be in violation of the alcohol policy during the 2004-2005 school year.  Of those students, each of them uniformly received a one week suspension from school.

Dr. Cruz has submitted a second declaration in reply to Plaintiff's objections to his initial declaration.  Dr. Cruz avers that the deposition notice served on him by Plaintiff requested that he bring documents reflecting the 13 investigations of drug offenses and the five investigations of alcohol related offenses in the District and the dispositions of those investigations.  Dr. Cruz avers:

4.   At my deposition on October 24, 2007, I provided to plaintiff's counsel all documents in the District's possession that were responsive to the deposition notice.  The documents produced at my deposition included all documents in the District's possession regarding the investigations by the District of all students found to be in violation of

5

> the District's drug policy during the 2003-
> 2004 school year, as well as documents
> reflecting the decision to recommend all
> thirteen students for expulsion.  Also
> produced were all documents in the District's
> possession regarding investigation of the
> five students who were found to be in
> violation of the school's alcohol policy
> during the 2003-2004 school year.  The
> documents reflect that all five were
> uniformly disciplined with one week
> suspension from school.  True and correct
> copies of all of these documents are attached
> hereto as Exhibit 'B' with the names and
> addresses of the students and their parents
> redacted.

It is true that these statements include hearsay accounts of the incidents as they are based on school records kept in the ordinary counsel of school disciplinary activities and are offered to show the basis for the administrative action taken by the school as to each incident.  They are not offered for the truth of the underlying facts of each incident.  Fed.R.Evid. 803(6) and (8).  Plaintiff's objections are overruled.

B.  <u>Defendant's Statement of Undisputed Facts</u>.

In moving for summary judgment, Defendant proffers the following facts as undisputed.

<u>DUF 1</u>: During the 2004-2005 school year, Plaintiff was a 12th grade student at Fowler High School.

This fact is undisputed.

<u>DUF 2</u>: Fowler High School was and is part of the Fowler Unified School District.

This fact is undisputed.

<u>DUF 3</u>: On October 5, 2004, Plaintiff was called to his car

1    parked in the Fowler High School parking lot after a drug

2    sniffing dog showed interest in the car.

3        Plaintiff disputes this fact, contending that the subject

4    car was not his, but his father's.  Plaintiff's evidentiary

5    support is his Declaration:

6            3.  On October 5, 2004, District personnel
             asked for permission to search an automobile
7            owned by my father that I had driven to, and
             parked at, Fowler High School.
8
     Plaintiff was in control of the vehicle; he was capable of
9
     consenting to its search.
10
         Plaintiff further disputes DUF 3 for "lack of competent
11
     evidence, as Defendant has not produced any direct evidence that
12
     a drug sniffing dog showed interest in the car."
13
         In reply, the District submits the Declaration of Stacey
14
     Shinn.  Shinn avers in pertinent part:
15
             1.  I am a canine handler, also sometimes
16           referred to as an agent, with Interquest
             Detection Canines of Central Valley
17           ('Interquest').  Interquest is licensed and
             registered by the U.S. Department of Justice,
18           Drug Enforcement Administration and regional
             regulatory agencies as required.
19
             2.  I received my training in August 2002
20           from Debra DeShon who is the owner of
             Interquest Detection Canines.  My training
21           consisted, among other things, of reviewing
             photographs of marijuana, as well as the
22           inspection of actual marijuana itself,
             including review and inspection of various
23           parts of a marijuana plant, to include the
             bud of the marijuana plant.  Ongoing every
24           year since then my contraband detection
             canine ('Canine') and I go through extra
25           training to stay up to date with the kinds of
             substances we are looking for.
26

                                     7

3.   I have worked full time during the regular school year, Monday through Friday, since August 2002 going out to school sites and other locations with my Canine for contraband inspection.

4.   I would estimate that between 2002 and October 5, 2004, there were at least 30 instances annually that my Canine would show an interest in a particular item in which I would uncover a substance that I suspected to be marijuana.  On some of those occasions, there was an admission by the student that the substance was marijuana.  On other occasions, I would do a Narcotic Identification Kit test ('NIK') that would come back as a presumptive positive for marijuana.

5.   On October 5, 2004, I was present with Russell Freitas in the parking lot at Fowler High School checking cars for possible contraband.  My dog showed an interest in a blue Camaro Z-28, license #42EP371 in the student parking lot.  I informed Mr. Freitas of this and he brought Jonathan Simonian to the parking lot.  I asked Jonathan if the vehicle was his, and he indicated that it was.

6.   I explained to Jonathan that the dog had showed interest in his car and he gave me permission to check inside.  Jonathan had in his possession a button key that he used to unlock the car.  My inspection inside the vehicle revealed what I suspected, in my professional opinion, to be a small amount of marijuana in the front console of the car.

7.   I suspected that the substance removed from the vehicle was the bud portion of a marijuana plant.  It was green in color and round.  It was the size of the round portion of the sewing pin (arrow points to this round portion) shown in Exhibit 'A' attached here.

8.  Mr. Freitas requested that I perform a NIK test on the substance.  The test confirmed a presumptive positive for marijuana.  Mr. Freitas was present when I performed the test and I advised Mr. Freitas

8

1    of the test results.

2    9.   Attached hereto as Exhibit 'B' is a true
     and accurate copy of the report I prepared in
3    connection with this incident.

4  The District also submits the Declaration of Russell Freitas,

5  Assistant Principal at Fowler High School from August 2003 to

6  October 5, 2004.   Mr. Freitas avers in pertinent part:

7    5.   In 1992, I attended a Criminology 120
     class that was offered through Fresno State
8    University.   As part of this course, I
     received instruction on the identification of
9    marijuana, to include reviewing actual
     photographs depicting marijuana.
10
     6.   Approximately eight or nine years ago
11   while I was still the Learning Director at
     Fowler High School, I attended a faculty
12   meeting which included instruction on the
     identification of marijuana.   A police
13   officer provided instruction to me and others
     at the meeting on how to identify marijuana.
14   We were also shown various pictures of
     marijuana and marijuana plant buds.
15
     7.   During the 2004-2005 school year, while I
16   was Assistant Principal, Jonathan Simonian
     was a 12th grade student at Fowler High
17   School.

18   8.   On or about October 5, 2004, I was
     present with Stacey Shinn, an Interquest
19   Detection Canine Agent when her contraband
     detection canine showed interest in a blue
20   Camaro in the student parking lot of Fowler
     High School.   The car was identified as
21   belonging to Jonathan Simonian.   I located
     the classroom Jonathan was in and asked him
22   to come with me to the parking lot.   I was
     present when Jonathan gave permission for the
23   vehicle to be searched.

24   9.   I was present when Stacey Shinn searched
     Jonathan's vehicle, and I immediately
25   observed the substance that she removed from
     it.   I immediately recognized the substance
26   as the bud portion of a marijuana plant.

9

10.  Attached hereto as Exhibit 'A', is a photograph of what the marijuana bud removed from Jonathan's car looked like.  This photograph was taken in a current case with the school that I am involved in and was not the substance taken from Jonathan's car.  However, the piece of marijuana identified by the arrow in this photograph represents the kind of substance that was removed from the vehicle.  It was round in shape and at least the size of the round portion of the sewing pin shown in Exhibit 'B' attached here.

11.  The substance taken out of Jonathan's car on October 5, 2004 very clearly had the appearance of the bud portion of a marijuana plant.  The substance was large enough that I could see the fuzzy texture of it, it was green in color with a slight reddish-brown tint, and I could see a sticky substance on it, which I believe is the resin of the plant.

12.  I was present with Stacey Shinn when she did a field test on it, placing the marijuana in the testing container.  I saw the chemicals turn purple, which I understood to mean that the substance was positive for marijuana.  Stacy [sic] Shinn confirmed for me at the time of the test that the substance had been confirmed as a presumptive positive for marijuana.

13.  Based upon my knowledge of experience [sic] recognizing marijuana and the facts set forth above regarding the October 5, 2004 incident with Jonathan, I a [sic] made a determination that Jonathan was in possession of marijuana.

Paragraph 5 of Shinn's Declaration and Paragraph 8 of Freitas' Declaration constitute admissible, competent evidence that Ms. Shinn personally observed her canine show an interest in the car being driven by Plaintiff; she conducted a consent search; and located a suspicious plant-like substance with the appearance of and which testified positive for marijuana.

10

1   This fact is undisputed.

2   <u>DUF 4</u>: A small substance which tested positive for marijuana

3   was found in the car.

4   Plaintiff disputes this fact "as Defendant has never

5   established that the 'pin head sized' speck of material was

6   marijuana; lack of competent evidence concerning the subject

7   test, or that the speck of material was marijuana."

8   Plaintiff does not refer to any evidence disputing DUF 4.

9   The Declarations of Stacey Shinn and Russell Freitas quoted above

10  constitutes admissible, competent evidence that the substance

11  found in Plaintiff's vehicle was marijuana based on field

12  identification and a presumptive test.  Plaintiff presents no

13  evidence that it was not.

14  This fact is undisputed.

15  <u>DUF 5</u>: On October 12, 2004, an Administrative Panel for the

16  Fowler Unified School District conducted an evidentiary hearing

17  to determine whether or not Plaintiff should be expelled from

18  drug possession of school grounds.

19  This fact is undisputed.

20  <u>DUF 6</u>: The recommendation of the Administrative Panel was to

21  expel Plaintiff for the balance of the fall semester.

22  This fact is undisputed.

23  <u>DUF 7</u>: The District suspended the expulsion and Plaintiff

24  was offered an alternative education program for the remainder of

25  the 2004-2005 fall semester.

26  Plaintiff disputes this fact, relying on his Declaration at

11

Paragraph 8 that "[d]espite the fact my expulsion was overturned, I was effectively expelled for the majority of the fall semester of my senior year and missed numerous student activities, including portions of my varsity soccer season."

Plaintiff's declaration does not effectively dispute this fact; it merely contests the legal effect of that fact, which is not at issue in DUF 8.

This fact is undisputed.

DUF 8: The discipline action recommended by the Administrative Panel was consistent with the District's pattern of discipline given to other students for drug related offenses.

Plaintiff disputes this fact, contending that Defendant did not expel other students who were suspected of possessing marijuana. Plaintiff refers to Paragraph 9 of his Declaration:

> 9.  The graduating class of Fowler High School in 2005 was rather small, and I knew everybody.  As a result of my daily attendance at Fowler High School for four consecutive years (excluding the period of my expulsion), I was personally familiar with all of my fellow students, as well as the school's teachers and administrators.  I knew from personal contact and observation that there were several students who were suspected of possessing or being under the influence of drugs.  I was aware when these students were called to the office to be searched, and when they had their lockers or cars searched.  In most of these cases, fellow students who were subject to search were not found to be in possession of any drugs.  Nevertheless, I was the only student at Fowler High School who was actually expelled for the mere suspicion of possessing drugs.

In reply, the District objects to Paragraph 9 of Plaintiff's

12

Declaration:

> [P]laintiff lacks foundation to testify to
> the matters set forth therein, as he did not
> personally observe each and every student who
> was investigated for being in possession of
> drugs within the Fowler Unified School
> District and was not present when other
> students were questioned or had their lockers
> or cars searched.  Moreover, the statement
> that plaintiff was the 'only student at
> Fowler Unified who was actually expelled from
> the school for the mere suspicion of
> possessing drugs' lacks foundation and mis-
> characterizes the evidence as plaintiff was
> not expelled for merely suspicion of
> possessing drugs on campus.

Plaintiff's declaration lacks foundation as Paragraph 9 does

not set forth specifically what happened to those other students

who were found in possession of drugs and is based on hearsay.

In addition, in reply, the District submits the Declaration

of Joanne Arnold, Assistant Principal at Fowler High School from

1995-1998 and Principal at Fowler High School from January 1999

to August 2005.  Ms. Arnold avers in pertinent part:

> 5.  From 1995-2005, during the time I was
> Vice [sic] Principal and Principal of Fowler
> High School, I was made aware of each and
> every incident in which a student was
> determined to be in possession of illegal
> drugs, a controlled substance, at Fowler High
> School.  I was made aware of all such
> incidents regardless of the quantity of drugs
> involved.

> 6.  From 1995 to 2005, during the time that I
> was Assistant Principal and Principal at
> Fowler High School, in every single incident
> where a determination was made that a student
> was in possession of a controlled substance,
> that student was recommended for expulsion,
> regardless of the quantity found.  For
> example:

a.)  I recall that in April 2003, four students were found to be in possession of marijuana and possibly under the influence.  A search was conducted of the vehicle owned by one of the students, and two marijuana 'roaches' were found in the front ashtray compartment. All four students were subsequently recommended for expulsion for a violation of Education Code Section 48900(C) as well as the District's Student Discipline Policy.  A copy of that portion of the expulsion proceeding documents that describes the substance is attached hereto as Exhibit 'A.'

b.)  I also recall another incident in October 1995, when I was Assistant Principal at Fowler High School wherein an 11th grade student was recommended for expulsion after a canine unit was alerted to possible drugs contained in the student's backpack.  The backpack was inspected and remnants of what appeared to be marijuana was found.  A test was run on the remnants by the canine trainer and it was confirmed that the substance was marijuana.  The student was recommended for expulsion for a violation of Education Code Section 48900(C) as well as the District's Student Discipline Policy.  A copy of that portion of the expulsion proceeding documents that describes the substance is attached here as Exhibit 'B.'

7.  I was also made aware of the October 5, 2004 incident involving Jonathan Simonian.  I reviewed Ms. Shinn's report ... I made a determination that Jonathan was in possession of marijuana and recommended to John Cruz, the District's Superintendent, that Jonathan be recommended for expulsion.

8.  During all the time I worked at Fowler High School, each incident where a student

14

                    was determined to be in possession of a
                    controlled substance, regardless of quantity,
                    the student was recommended for expulsion.

The District also submits the Declaration of Rudy Salazar,

Principal of Casa Blanc Continuation High School in the Fowler

Unified School District.  (Mr. Freitas avers the District had

only two highs schools from 1998 to 2005, Fowler High School and

Casa Blanca).  Mr. Salazar avers in pertinent part:

          2.  From 1985 to June 2006, during all the
          time that I was Principal at Casa Blanca, I
          was made aware of each and every incident
          where any student was determined to be in
          possession illegal [sic] drugs, a controlled
          substance, at Casa Blanca.  I was made aware
          of all such incidents regardless of the
          quantity of the drugs involved.

          3.  During the time that I was Principal at
          Casa Blanca, in every single incident where a
          determination was made that a student was in
          possession of a controlled substance, that
          student was recommended for expulsion,
          regardless of quantity found.

          4.  For example, on or about September 9,
          2000, a teacher observed a student trying to
          hide a white crumbled paper as the teacher
          walked by.  The student then consented to
          allowing the teacher to search his pockets.
          The teacher pulled out the crumbled white
          paper with what appeared to be a lug nut.
          The object and the paper had the distinct
          smell of possible marijuana with residue and
          ash debris on the paper and lug nut.  The
          student was turned over to me by the teacher
          and was subsequently expelled from school for
          being in violation of Education Code Section
          48900(C) as well as the District's Student
          Discipline Policy.  A copy of that portion of
          the expulsion proceeding documents that
          describes the substance is attached hereto as
          Exhibit 'A.'

          5.  On or about January 7, 2002, a student at
          Casa Blanca was found to be in possession of

                              15

marijuana, a marijuana pipe and a cigarette
lighter at school.  The K-9 unit had detected
the marijuana on the student's sweatshirt
jacket.  A search of the student's pockets
then revealed a marijuana pipe that contained
marijuana residue.  The student was
recommended for expulsion based on a
violation of Education Code Section 48900(C)
as well as the District's Student Discipline
Policy.  A copy of that portion of the
expulsion proceeding documents that describes
the substance is attached hereto as Exhibit
'B.'

6.  On or about March 11, 2005, a 12th grade
student at Casa Blanca was recommended for
expulsion after a drug enforcement dog with
Interquest Detection Canines alerted to a
possible substance in the student's vehicle.
The drug enforcement officer thereafter
found, among other items, various seeds and
cigarettes that appeared to have a leafy like
substance with marijuana residue in it.  The
substance was tested and confirmed as
marijuana.  The student was recommended for
expulsion for a violation of Education Code
Section 48900(C) as well as the District's
Student Discipline Policy.  A copy of that
portion of the expulsion proceeding documents
that describes the substance is attached
hereto as Exhibit 'C.'

7.  During all the time I worked at Casa
Blanca, each incident where a student was
determined to be in possession of a
controlled substance, regardless of the
quantity, the student was recommended for
expulsion.

DUF 9: During the 2003-2004 school year, there were thirteen

investigations by the administrative review panel regarding

suspected drug offenses.

Plaintiff disputes this fact "as Defendant has not produced

any direct evidence to support this fact."

Dr. Cruz's reply declaration and attached documents provides

16

evidentiary support for DUF 9.  These documents were provided to Plaintiff at Dr. Cruz's deposition.  Plaintiff presents no evidence to contradict DUF 9.

This fact is undisputed.

DUF 10: Each of the students found to be in violation of the District's drug policy were expelled for at least one semester or more.

Plaintiff disputes this fact "as Defendant has not produced any direct evidence to support this fact."

The District's evidence submitted in reply constitutes such evidence.  Plaintiff presents no contrary, admissible evidence.

This fact is undisputed.

DUF 11: Eight of the thirteen students who were expelled had their expulsions suspended and were offered an alternative education program.

Plaintiff disputes this fact "as Defendant has not produced any direct evidence to support this fact."

Dr. Cruz's reply declaration and attached documents provides evidentiary support for DUF 11.  These documents were provided to Plaintiff at Dr. Cruz's deposition; they are business records of a public entity.  Plaintiff presents no evidence to contradict DUF 11.

This fact is undisputed.

DUF 12: During the 2003-2004 school year, there were five investigations by the Fowler High School Administration regarding alcohol related offenses within the district.

1   Plaintiff disputes this fact "as Defendant has not produced
2   any direct evidence to support this fact."

3   Dr. Cruz's reply declaration and attached documents provides
4   evidentiary support for DUF 12.  These documents were provided to
5   Plaintiff at Dr. Cruz's deposition.  Plaintiff presents no
6   evidence to contradict DUF 12.

7   <u>DUF 13</u>: Students found to be in violation of the alcohol
8   policy were uniformly disciplined with one week suspensions from
9   school.

10  Plaintiff disputes this fact "as Defendant has not produced
11  any direct evidence to support this fact."

12  Dr. Cruz's reply declaration and attached documents provides
13  evidentiary support for DUF 13.  These documents were provided to
14  Plaintiff at Dr. Cruz's deposition.  Plaintiff presents no
15  evidence to contradict DUF 13.

16  <u>DUF 14</u>: During the 2004-2005 school year, four students were
17  investigated and found to be in violation of the drug policy,
18  including Plaintiff.

19  Plaintiff disputes this fact "as Defendant has not produced
20  any direct evidence to support this fact."

21  Dr. Cruz's reply declaration and attached documents provides
22  evidentiary support for DUF 14.  These documents were provided to
23  Plaintiff at Dr. Cruz's deposition.  Plaintiff presents no
24  evidence to contradict DUF 14.

25  <u>DUF 15</u>: Each of these students were expelled for the
26  remainder of the school year, with the exception of Plaintiff,

18

who was expelled for the remainder of the fall semester only.

Plaintiff disputes this fact "as Defendant has not produced any direct evidence to support this fact."  Dr. Cruz's reply declaration and attached documents provides evidentiary support for DUF 15.  These documents were provided to Plaintiff at Dr. Cruz's deposition.  Plaintiff presents no evidence to contradict DUF 15.

Plaintiff admits he was expelled [in an alternate program] only for the majority of the fall semester.

This fact is undisputed.

DUF 16: During the 2004-2005 school year, seven students were found to be in violation of the District's alcohol policy. Each of these students received a one week suspension from school.

Plaintiff disputes this fact "as Defendant has not produced any direct evidence to support this fact."

Dr. Cruz's reply declaration and attached documents provides evidentiary support for DUF 16.  These documents were provided to Plaintiff at Dr. Cruz's deposition.  Plaintiff presents no evidence to contradict DUF 16.

This fact is undisputed.

C.  Plaintiff's Statement of Undisputed Facts.

In addition to responding to the Defendant's Statement of Undisputed Facts, Plaintiff proffers the following facts as undisputed in opposing Defendant's motion for summary judgment.

PUF 1: In October 2004, Plaintiff was a senior in his fourth

19

year of attendance at Fowler High School.  Plaintiff was essentially an "A" student, who was actively involved in a broad range of student activities, including varsity soccer and track.

The District does not dispute these facts, but contends that they do not create a triable issue of material fact.

**PUF 2**: On October 5, 2004, Defendant searched an automobile that Plaintiff had parked at Fowler High School.  The search was conducted by a private security employee hired by Defendant.  In the course of examining the interior of the car, the employee uncovered a 'pinhead size' speck of material, which was suspected to be marijuana.

The District does not dispute that Plaintiff's car was parked at Fowler High School and that a search was conducted. The District disputes the characterization of the substance found as a 'speck', referring to the Declarations of Stacey Shinn and Russell Freitas quoted above.  Further, the District argues, the quantity of marijuana found is irrelevant and not a material issue in this action because Plaintiff was not prosecuted under state law.

**PUF 3**: Plaintiff was immediately suspended from school. Plaintiff's parents were advised that Defendant had initiated expulsion proceedings predicated upon the fact that marijuana had been found in Plaintiff's car.

The District does not dispute that Plaintiff was immediately suspended from school and that his parents were informed that marijuana had been found in Plaintiff's vehicle.  The District

1 argues that PUF 3

2          does not create a triable issue of material
          fact as any inference that the substance
3          discovered in Plaintiff's car was not
          actually marijuana contravenes the actual
4          evidence and does not nullify the application
          of Education Code § 48900, which only
5          requires a determination by District
          employees that the substance was marijuana.
6          Moreover, District employees made a
          determination that the substance found in
7          Plaintiff's car was marijuana.

8      **PUF 4**: Plaintiff's alleged offense (possession of marijuana)

9 did not trigger mandatory expulsion.  Rather, the alleged offense

10 involved only discretionary expulsion.

11     The District does not dispute this fact, but argues that it

12 is immaterial.

13     **PUF 5**: Plaintiff was recommended for expulsion for violating

14 California Education Code § 48900(c) and Defendant's Student

15 Discipline Policy, which prescribes the unlawful possession of

16 any controlled substance.

17     This fact is undisputed.

18     **PUF 6**: The matter proceeded to Administrative Hearing on

19 October 12, 2004.

20     This fact is undisputed.

21     **PUF 7**: The applicable administrative regulations provided

22 the procedures under which the Administrative Hearing would

23 proceed, and specifically provided that no evidence to expel

24 shall be based solely on hearsay evidence.

25     The District does not dispute this fact, but argues that it

26 is immaterial.

**PUF 8**: At the Administrative Hearing, Defendant failed to offer any evidence, other than hearsay evidence, to establish that the minute substance discovered in Plaintiff's car was marijuana, or that Plaintiff possessed it.

The District disputes PUF 8, contending that the fact is irrelevant and does not create a triable issue of material fact that the substance discovered in Plaintiff's car was not actually marijuana.

**PUF 9**: Despite the absence of evidence to establish that Plaintiff was in possession of marijuana, the Administrative Hearing concluded with a recommendation that Plaintiff be expelled for the remainder of the fall semester, and that Plaintiff would have to meet certain specified standards of conduct in order to qualify for discretionary re-admission for the second semester.

The District does not dispute PUF 9 as to the outcome of the Administrative Hearing.  The District disputes the statement "[d]espite the absence of evidence to establish that P]laintiff was in possession of marijuana", referring to the evidence quoted above.

**PUF 10**: Plaintiff exercised his right to contest his expulsion before the Fresno County Board of Education.  Pursuant to the Expulsion Appeal Process, that hearing was not *de novo*, but was essentially conducted pursuant to a substantial evidence standard.

This fact is not disputed, but the District contends that it

is irrelevant.

**PUF 11**: **In preparing for the appellate hearing, Defendants submitted a written brief which asserted that Plaintiff had been expelled because he was found to have possessed marijuana in his car.**

This fact is not disputed, but the District contends that it is irrelevant.

**PUF 12**: **Plaintiff proceeded to his appeal hearing on December 16, 2004, at which time the County Board of Education ruled to overturn Plaintiff's expulsion.**

This fact is not disputed, but the District contends that it is irrelevant.

**PUF 13**; **Despite the fact that Plaintiff's expulsion was overturned, he was effectively expelled for the majority of the fall semester of his senior year, and missed numerous student activities, including portions of the varsity soccer season.**

This fact is not disputed, but the District contends that it is irrelevant.

**PUF 14**: **Plaintiff was expelled even though other students in the Fowler Unified School District who were suspected of using or possessing marijuana were not expelled.**

Plaintiff relies on Paragraph 9 of his declaration. Paragraph 9 lacks foundation, is based on hearsay, and does not constitute admissible evidence sufficient to create an issue of material fact.

Plaintiff also relies on the deposition testimony of Dr.

1  Cruz, wherein Dr. Cruz testified:

2          Q.  In any of the student discipline records
           produced here today in this deposition, are
3          any of these expulsions the result of a
           canine hit on a student's personal effects in
4          an instance in which the ensuing search did
           not reveal the presence of any illegal drug?

5
           A.  In that list of documents that we gave
6          you I believe there are none.

7      Dr. Cruz's testimony does not create a genuine issue of fact

8  because the material found in Plaintiff's vehicle tested positive

9  for marijuana.

10         D.  <u>Merits of Motion</u>.

11     California Education Code § 48900 provides in pertinent

12 part:

13         A pupil may not be suspended from school or
           recommended for expulsion, unless the
14         superintendent or the principal of the school
           in which the pupil is enrolled determines
15         that the pupil has committed an act as
           defined pursuant to any of subdivisions (a)
16         to (q) inclusive:

17         ...

18         (c) Unlawfully possessed, used, sold, or
           otherwise furnished, or been under the
19         influence of, any controlled substance listed
           in Chapter 2 (commencing with Section 11053)
20         of Division 10 of the Health and Safety Code,
           an alcoholic beverage, or an intoxicant of
21         any kind.

22 Education Code § 48915(a) provides in pertinent part:

23         [T]he principal or superintendent of schools
           shall recommend the expulsion of a pupil for
24         any of the following acts committed at school
           or at a school activity off school grounds,
25         unless the principal or the superintendent
           finds that expulsion is inappropriate, due to
26         the particular circumstance:

                              24

1              ...

2              (3) Unlawful possession of any controlled
               substance listed in Chapter 2 (commencing
3              with Section 11053) of Division 10 of the
               Health and Safety Code, except for the first
4              offense for the possession of not more than
               one avoirdupois ounce of marijuana, other
5              than concentrated cannabis.

6    Education Code § 48915(b) provides in pertinent part:

7              Upon recommendation by the principal,
               superintendent of schools, or by a hearing
8              officer or administrative panel appointed
               pursuant to subdivision (d) of Section 48918,
9              the governing board may order a pupil
               expelled upon a finding that the pupil
10             committed an act listed in subdivision ...
               (c) ... of Section 48900.   A decision to
11             expel shall be based on a finding of one or
               both of the following:

12
               (1) Other means of correction are not
13             feasible or have repeatedly failed to bring
               about proper conduct.

14
               (2) Due to the nature of the act, the
15             presence of the pupil causes a continuing
               danger to the physical safety of the pupil or
16             others.

17        Plaintiff's claim of denial of equal protection is based on

18   his assertion that he constitutes a "class of one".

19        In *Village of Willowbrook v. Olech*, 528 U.S. 562, 564

20   (2000), the Supreme Court held:

21             Our cases have recognized successful equal
               protection claims brought by a 'class of
22             one,' where the plaintiff alleges that she
               has been intentionally treated differently
23             from others similarly situated and that there
               is no rational basis for the difference in
24             treatment ... In so doing, we have explained
               that '"[t]he purpose of the equal protection
25             clause of the Fourteenth Amendment is to
               secure every person within the State's
26             jurisdiction against intentional and

                              25

> arbitrary discrimination, whether occasioned
> by express terms of a statute or by its
> improper execution through duly constituted
> agents.' ....

"Where an equal protection claim is based on 'selective enforcement of valid laws,' a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for 'an impermissible motive.'" *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004), citing *Freeman v. City of Santa Ana*, 68 F.3d 1180, 11987-1188 (9th Cir.1995). The Ninth Circuit explained:

> Disparate government treatment will survive
> rational basis scrutiny 'as long as it bears
> a rational relation to a legitimate state
> interest.' *Patel v. Penman*, 103 F.3d 868,
> 875 (9th Cir.1996). Although '[s]elective
> enforcement of valid laws, without more, does
> not make the defendants' action irrational,'
> *Freeman*, 68 F.3d at 1188, there is no
> rational basis for state action '"that is
> malicious, irrational or plainly arbitrary."'
> *Armendariz*, 75 F.3d at 1326 (quoting *Lockary
> v. Kayfetz*, 917 F.2d 1150, 1155 (9th
> Cir.1990)(as amended)).

*Squaw Valley Development Co., id.*

Defendant moves for summary judgment on the ground that Plaintiff cannot establish that he has been treated differently from others similarly situated, referring to the averments and evidence attached to Dr. Cruz's declaration. Exhibit A to Dr. Cruz's Declaration describes thirteen students who were disciplined by expulsion for drug offenses during the 2003-2004 school year. The thirteen offenses are described as: (1) under the influence of marijuana; (2) under the influence of marijuana;

(3) under the influence of marijuana; (4) possession of a shank,
drug paraphernalia, gang items, under the influence of marijuana;
(5) furnishing prescription pills to another student without his
knowledge; (6) under the influence of marijuana; (7) under the
influence of marijuana; (8) under the influence of marijuana; (9)
under the influence of marijuana; (10) under the influence of
marijuana, alcohol and mushrooms; (11) under the influence of
marijuana; (12) under the influence of marijuana; (13) under the
influence of marijuana.   Exhibit D describes four students, one
of whom was Plaintiff, who were disciplined by expulsion for drug
offenses during the 2004-2005 school year: (1) under the
influence of marijuana, bag of marijuana found in student's car;
(2) [Plaintiff] possession of small quantity of marijuana; (3)
possession of marijuana seeds and cigarettes with marijuana
residue and knives found in student's car; and (4) possession of
Vicodin pills and photographs of marijuana.   In addition,
Defendant refers to the incidents described in the declarations
of Joanne Arnold and Rudy Salazar.

Plaintiff, accepting the evidence proffered by Defendant as
true, contends that there is "compelling evidence" that Plaintiff
was intentionally treated differently from other similarly
situated students.   Plaintiff argues that these students were
disciplined for being under the influence of marijuana or in
possession of a useable amount of a controlled substance.
Plaintiff contends:

In stark contrast to those ... students,

27

Plaintiff was expelled despite the fact that
Defendant never established he was in the
possession of, or under the influence, of
marijuana or any other unlawful drug.

In this regard, Plaintiff was no different
than any other student at Fowler High School
who was suspected of drug possession or drug
use.  However, Plaintiff was the only student
at Fowler High School in the 2003-2004 [sic]
school year who was expelled because he or
she was suspected of drug possession.  It is
patent that Defendant lacks a rational basis
for targeting Plaintiff as the only student
to be expelled for the mere suspicion of
possessing marijuana.

The hearing before the Administrative Panel, a transcript of

which is attached to Plaintiff's Declaration in opposition to the

motion for summary judgment, sets forth the testimony of Stacey

Shinn, who found the marijuana in Plaintiff's car.  Shinn

testified that it was a minute quantity and further testified:

Shinn: I suspected this substance in question
to be marijuana.  And what we have are a
positive, are a presumptive positive field
test.  We also call them NIK tests.  And what
we do is we put the substance in question in
here.  There's some vials with the chemicals
in it.  You palpi ..., you agitate it for a
minute and what it does is it pulls the T,
the THC out of it, if it's in fact marijuana.
We pop the other ampule and if it, we presume
it's marijuana, if turns purple then we can
presume it is.  And it did turn purple.

Billington: Okay, question.

P. Simonian: When Miss Abhold called me she
told me it was two minute traces of
marijuana.

Shinn: Yeah, it's a small amount of
marijuana.

P. Simonian: Thank you.

28

1          <u>Shinn</u>: Umhmm [sic].  Or suspected marijuana.

2   This testimony is consistent with the Declarations of Stacey

3   Shinn and Russell Freitas quoted above.  Plaintiff presented no

4   evidence to the Administrative Panel or in subsequent proceedings

5   to disprove that the substance was, in fact, marijuana.  The

6   marijuana was found in Plaintiff's car at school.  Nonetheless,

7   Plaintiff argues:

8            [A]ny conclusion drawn by Defendant that the
             material was marijuana laced [sic]
9            foundation, and was based upon speculation
             and hearsay.  Specifically, Defendant's
10           assertion that the material was actually
             marijuana was based on the chemical test, and
11           Defendant failed to offer any evidence
             whatsoever, other than hearsay evidence, to
12           establish that the mere fact that the
             material turned purple in solution compelled
13           the conclusion that the substance was
             marijuana.  Finally, the fact that Defendant
14           located a pin sized speck of marijuana buried
             in the console of the vehicle's dashboard did
15           not remotely establish that Plaintiff
             possessed marijuana.
16
    This argument is not a substitute for evidence.
17
         Plaintiff cites *People v. Aguilar,* 223 Cal.App.2d 119, 122-
18
    123 (1963):
19
             It is not scientific measurement and
20           detection which is the ultimate test of the
             known possession of a narcotic, but rather
21           the awareness of the defendant of the
             presence of the narcotic.  Guilt or innocence
22           on a charge of illegal possession may not be
             determined solely by the skill of the
23           forensic chemist in isolating a trace of the
             prohibited narcotic in articles possessed by
24           the defendant.  As forensic science,
             measuring devices and techniques improve,
25           smaller and smaller amounts of residue are
             required for the chemist to detect the
26           presence of the narcotic.  The presence of

                                  29

1          the narcotic must be reflected in such form
2          as reasonably imputes knowledge to the
           defendant.

3 Plaintiff also cites *People v. Leal,* 64 Cal.2d 504 (1966).   In

4 *Leal*, the defendant possessed a small spoon on which there was

5 encrusted approximately 32 milligrams of a crystalized substance

6 later stipulated to contain heroin.   The Supreme Court held:

7          [I]n penalizing a person who possesses a
           narcotic the Legislature proscribed
8          possession of a substance that has a narcotic
           potential; it condemned the commodity that
9          could be used as such.  It did not refer to
           *useless* traces or residue of such substance.
10         Hence the possession of a minute crystalline
           residue of narcotic useless for either sale
11         or consumption .. does not constitute
           sufficient evidence in itself to sustain a
12         conviction.  Since in the present case the
           prosecution proved no more than defendant's
13         possession of traces of narcotics and did not
           show that such residue was usable for sale or
14         consumption, we remit it to the trial court
           for the purpose of ascertaining whether or
15         not such factual elements were present.

16 64 Cal.2d at 512.  But see *People v. Rubacalba*, 6 Cal.4th 62, 66

17 (1993):

18         [T]he *Leal* usable-quantity rule prohibits
           conviction only when the substance possessed
19         simply cannot be used, such as when it is a
           blackened residue or a useless trace.  It
20         does not extend to a substance containing
           contraband, even if not pure, if the
21         substance is in a form and quantity that can
           be used.  No particular purity or narcotic
22         effect need be proven.

23      Plaintiff's contention is not relevant to his claimed denial

24 of equal protection.  Although Plaintiff complains about the

25 quality of the evidence that the substance found in his vehicle

26 was marijuana, Agent Shinn testified at the Administrative

                                   30

Hearing that the material tested positive for marijuana using the NIK test.  This is not a situation where the material was not tested at all.  Further, the material that tested positive using the NIK test was found in the car Plaintiff was driving, to which he had the key, and had parked on school grounds.

At the hearing on the motion for summary judgment, Defendant argued that Plaintiff's discipline was recommended by the Administrative Panel because Plaintiff had had other disciplinary problems in the past.  Defendant refers to the  Recommendation of the Administrative Panel attached to Plaintiff's declaration as Exhibit C:

> <u>FINDINGS OF FACT AND DECISION</u>
>
> ...
>
> Assistant Principal Rusty Freitas testified that during the 2003/04 school year, an incident occurred in which 'Zig-Zag' rolling papers were found in Jonathan's vehicle.  Mr. Freitas testified that he held a conference with father, David Simonian, after the rolling papers were found in Jonathan's vehicle.  During this conference, Mr. Freitas indicated that such rolling papers are generally associated with marijuana use.  The student's witnesses testified that the rolling papers belonged to Jonathan's then-girlfriend, a resident of Spain, who rolled her own cigarettes.
>
> Principal Joanne Abhold testified that during the 2002/03 school year, an incident occurred where Jonathan Simonian's Drama teacher suspected that Jonathan was under the influence of marijuana during an after school Drama class activity.  Ms. Abhold testified that she contacted mother, Patty Simonian, regarding the suspicions of Jonathan's Drama teacher.

**DETERMINATION OF ISSUES**

Based upon the facts established at the hearing, grounds exist for the expulsion of Jonathan Simonian for violation of Education Code section 48900 subdivision(c).  The Panel does not believe that a violation of Education Code section 48900 subdivision (c) requires any definitive amount of marijuana or that the marijuana be on the student's person as opposed to a student's vehicle. Having credited the testimony of Stacey Shinn that the substance found in Jonathan's vehicle on October 5, 2004, was marijuana and that Jonathan's vehicle was parked on the grounds of Fowler High School, the Panel has determined that Jonathan unlawfully possessed marijuana on school grounds in violation of Education Code § 48900 subdivision (c).  The panel further finds that due to the nature of the violation, and the fact that parental contact has been made over the prior two school years of suspected marijuana use, that other means of correction are not feasible or have repeatedly failed to bring about proper conduct.

In reversing the recommendation of the Administrative Panel, the Fresno County Board of Education ruled in pertinent part:

Violation of Section 48900(c) is a permissive expulsion offense.  Pursuant to Education Code Section 48915, when handling permissive expulsion offenses, a school board must first find each element of the offense charged and then make an additional finding that:

a.)  Other means of correction are not feasible or have repeatedly failed to bring about proper conduct; or

b.) The presence of the pupil causes a continuing danger to the safety of the pupil or others.

The failure to make this additional finding allows a County Board of Education to overturn the expulsion or remand the matter back to the district board to adopt the

32

necessary finding if the County Board of
Education determines there is substantial
evidence in the record from which the finding
can be made.

Likewise, the County Board of Education may
overturn the expulsion if it determines that
the record lacks substantial evidence to
support the secondary feasibility/danger
finding.

Appellant's expulsion hearing was held before
a panel on October 12, 2004.  With respect to
the incident giving rise to this expulsion,
district witnesses testified that on October
5, 2004, a canine alerted on Appellant's car
while it was parked on campus.  A search of
the car revealed a pinhead-sized leaf of
marijuana found stuck to a piece of rubber
lining on the bottom of the front console
glove compartment, under a garage opener.
The substance tested positively for
marijuana.  District witnesses acknowledged
that the pin-head sized matter was not a
usable amount of marijuana.  Under criminal
law, this would normally preclude conviction
(*People v. Piper* (1971) 96 Cal.Rptr. 643).

Assuming that possession of a speck of
marijuana can support an expulsion, Mr.
Freitas indicated that he is proud of the way
Appellant handles situations, that Appellant
is respectful of adults and that Appellant's
discipline record is fairly clean and his
attendance is good, if not outright
'favorable.'  The record reflects that
Appellant overall is an 'A' student, works on
weekends, participates in both band and
leadership classes and had been
simultaneously taking classes at Fowler High
School and California State University,
Fresno, quite successfully.

Juxtaposed, nothing in the record suggests
that Appellant's behavior cannot be feasibly
corrected.  The record is void of any efforts
to remediate Appellant's behavior through
other means of correction.

The Board of Education did not reverse the expulsion on the

33

ground that the substance was not marijuana or that the testing of the substance was inadequate.  Both Ms. Shinn and Mr. Freitas have averred that they recognized the material as marijuana when it was first found.

Plaintiff argues that he could not have been disciplined unless the amount of marijuana was "usable", i.e., that the possession of an amount of marijuana that is not "usable" is not "unlawful" within the meaning of the Education Code.

The District argues that, pursuant to Education Code § 48915(a)(3), it *must* make a recommendation of expulsion when a student is found in possession of a controlled substance, unless it is the student's first offense and the possession is of less than an ounce of marijuana.  However, the District contends, it retains discretion pursuant to Education Code § 48915(b) to recommend expulsion for less than an ounce as long as it further finds one or both of the conditions listed in Section 48915(b), which, according to the Fresno County Board of Education, the District did not do in Plaintiff's case.  Further, the District argues, Education Code § 48900(c) makes it a violation for a student to possess marijuana without regard to any quantity or amount.

Contrary to the District's position, the statutes use the term "unlawful possession."  If Plaintiff could not have been prosecuted for the amount of marijuana found in the vehicle, the possession was not unlawful, at least in terms of a criminal prosecution, for the purpose of criminal prosecution.  However,

34

because Plaintiff's claim is a denial of equal protection, the only relevance of his treatment is if he can show that other students in the District who possessed less than "usable" quantities of controlled substances were not expelled.  No similar evidence has been proffered.  The District's belatedly argues that Plaintiff was recommended for expulsion even though the amount of marijuana found in his vehicle was not unlawful because of prior disciplinary problems.  The Recommendation of the Administrative Panel supports this contention.  However, the recommendation of expulsion was reversed by the Fresno County Board of Education because the Administrative Panel failed to remediate Plaintiff's behavior through other means of correction short of expulsion.

Plaintiff's contention that he was the only pupil at Fowler High School who was expelled for the "mere suspicion" of possessing marijuana has no evidentiary support other than Plaintiff's conclusory declaration.  As noted, Paragraph 9 of Plaintiff's declaration lacks foundation and is based on speculation and improper opinion.  Absent admissible evidence, Plaintiff, who bears the burden of proof that, as a class of one, he was intentionally treated differently than others similarly situated, cannot withstand summary judgment.

Even if Plaintiff could prove Plaintiff's assignment to alternate education was unsupported, there is no evidence Plaintiff was treated differently from any other student with possession of marijuana, in executing what was in effect a zero

tolerance policy.

### CONCLUSION

For the reasons stated above:

1.  Defendant's motion for summary judgment is GRANTED;

2.  Counsel for Defendant shall prepare and lodge a form of order and judgment reflecting the ruling in this Memorandum Decision within 5 days of the filing date of this Memorandum Decision.

IT IS SO ORDERED.

Dated:   **February 19, 2008**            **/s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE